THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUIS A. MEDINA, Defendant-Appellant.

Second District   No. 2—92—0372

Opinion filed January 15, 1993.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Kathleen T. Zellner, of Kathleen T. Zellner & Associates, and Douglas H. Johnson, both of Naperville, for appellant.

Gary V. Johnson, State's Attorney, of Geneva, and Robert J. Morrow, of Early, Collison, Tousey, Regan, Wlodek & Morrow, of Elgin (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendant, Luis Medina, was convicted after a bench trial of unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 1401), unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1402), and unlawful possession of a controlled substance without a controlled substance tax stamp (Ill. Rev. Stat. 1991, ch. 120, par. 2160). The tax stamp count was dismissed after trial, and judgment on the possession count was merged into the judgment and sentence on the possession with intent to deliver count. Defendant was sentenced to 20 years' imprisonment, and he filed a timely appeal.

In this court, defendant contends (1) that the trial court's denial of his request for a continuance denied him a fair trial where the State divulged the identity of a confidential informant only four days prior to trial; (2) that the trial court should not have limited his cross-examination of three law enforcement officers; (3) that the trial court should not have denied his second motion to dismiss for failure to provide a speedy trial; and (4) that the introduction of other crimes and prior bad acts evidence denied him a fair trial. We affirm.

The charges in this case were instituted after approximately nine kilograms of cocaine, along with drug paraphernalia, were found in a detached garage on defendant's property. The police were told on Friday, March 1, 1991, by a confidential informant, Ronnie White, that a kilogram of cocaine was present in defendant's garage. White told the officers that more cocaine would be in the garage in the near future. On Sunday, March 3, 1991, law enforcement officers executed a search warrant at the garage and recovered approximately nine kilograms of cocaine. While the search was in progress, White met with an officer near the searched premises and gave the officer another kilogram of cocaine that White said he got from defendant's garage.

## CONTINUANCE

Prior to trial, the State moved to prohibit the introduction of, or testimony concerning, the kilogram of cocaine delivered to law enforcement officers by White. Ten days later, and four days prior to the start of trial, the court denied the motion, and the State immediately thereafter moved to add White's name to the witness list as a possible rebuttal witness. On the morning of the first day of trial, defendant moved for a continuance based on the alleged late disclosure of White's identity as the confidential informant. The trial judge

denied the motion, but gave defense counsel time to talk with White and stated that he would continue the trial if White revealed information warranting an investigation. White refused to talk with defense counsel, and the trial went forward as scheduled.

Defendant claims that the denial of his motion for a continuance denied him a fair trial because he was not given enough of an opportunity to "investigate the circumstances surrounding the informant's activities." Defendant goes on to characterize White as a crucial witness for the State and claims that the State purposefully delayed disclosure of White's identity. The State counters that defendant was not prejudiced by the denial and is thus not entitled to reversal.

Whether to grant a motion for a continuance is within the discretion of the trial court, and the party contesting the denial of its motion must establish that the denial resulted in prejudice at trial. (*People v. Dalzotto* (1977), 55 Ill. App. 3d 995, 999.) The particular facts and circumstances of the case are to be considered when deciding a motion for a continuance. (*People v. Edwards* (1988), 167 Ill. App. 3d 324, 332.) "A continuance for the purpose of allowing defense counsel further time to prepare is not erroneously denied unless the denial serves to prejudice defendant in some way." *Edwards*, 167 Ill. App. 3d at 332.

■■ Here, defendant was not prejudiced by the denial of his motion for a continuance. A number of factors leads us to this conclusion.

First, defendant was given the opportunity to talk with White before trial with the understanding that defendant could obtain a continuance if White disclosed anything that warranted investigation. White refused to talk with defendant. It thus appears that the trial court was not merely attempting to speed the trial along in disregard of defendant's rights.

Second, defendant was able to question White about a number of relevant topics, including White's prior record and his experience as a drug dealer; White's agreement with the State, whereby he would escape punishment on drug charges if he "made" multikilogram drug cases; whether White owned and had given a cocaine press to defendant; and whether White himself planted the cocaine in defendant's garage. White's character and his motive to frame defendant to escape punishment on his own drug charges were laid bare before the trial judge as the finder of fact. Further, defense counsel made no claim at the conclusion of White's testimony that additional time or witnesses were required in order to present the defense properly.

Third and last, White was not called by the State. This was not a case in which the State called a just-disclosed witness and the defendant was ill-prepared to counter damaging testimony. Here, defendant could have avoided what he terms in his brief as Ron White's "attack" by not calling him to the stand.

The case of *People v. Conner* (1988), 176 Ill. App. 3d 900, cited by defendant for the proposition that the identity of an informant can be required when the informant is also a participant in the crime, is distinguishable. In *Conner*, the defendants claimed they were entrapped at their trial on drug charges. The informant whose identity was not revealed had allegedly owed one of the defendants a legitimate business debt and had repeatedly failed to pay the debt, endangering that defendant's legitimate business. The informant had allegedly told the defendants that he could pay the debt if the defendants could obtain some cocaine for him. *Conner*, 176 Ill. App. 3d at 902-05.

Here, in contrast to *Conner*, the informant's identity was revealed to defendant, who was then given wide latitude in exploring the informant's participation in the events giving rise to the charges against defendant. Moreover, the same kind of unique factual scenario present in *Conner* is not present in this case. Defendant was not prejudiced by the trial court's denial of his motion for a continuance.

### CROSS-EXAMINATION

Defendant next claims that he was denied a fair trial when he was not allowed to cross-examine three law enforcement officers about their relationship with Ron White, the confidential informant. The State answers that defendant has again failed to show any prejudice from the court's ruling.

At trial, T.J. Strickland, a detective with the Elgin police department, testified as to his participation in the search of the garage on defendant's land and what that search uncovered. He also testified as to his interview with defendant in defendant's house after the search. Defense counsel was prohibited from cross-examining Detective Strickland about the detective's conversations and dealings with Ron White around the time of the procurement and execution of the search warrant. The trial judge ruled such inquiry beyond the scope of direct examination.

Kane County deputy sheriff Victor Fields also testified for the State as to his participation in the search and the questioning of defendant. Again, defendant was barred from asking Mr. Fields on cross-examination about Fields' contacts with Ron White during the investigation of defendant.

John Mann, an agent with the Federal Drug Enforcement Administration testified for the State regarding the packaging and sale of cocaine. Defense counsel was allowed on cross-examination to question Mann about his receipt of the one kilogram of cocaine from White during the search.

Agent Mann was subsequently called as a witness for the defense, at which time defense counsel questioned Mann in detail about his contact with White. Mann also admitted knowledge that White had a deal with the State to work off charges against him and that White had been in defendant's garage on the day of the search.

Further, Detective Strickland was also called as a witness by the defense and questioned about Ron White's connection to the investigation. Deputy Fields was not called as a defense witness, although he was apparently available to testify.

Generally, cross-examination is limited to matters brought out on direct examination. (*People v. Franklin* (1990), 135 Ill. 2d 78, 97.) However, cross-examination may " 'develop all circumstances within the knowledge of the witness which explain, qualify, discredit or destroy his direct testimony although they may incidentally constitute new matter which aids the cross-examiner's case.' " (*People v. Williams* (1977), 66 Ill. 2d 478, 486-87, quoting S. Gard, Illinois Evidence Manual R. 471 (1963).) Notably, a trial court's ruling regarding the proper scope of cross-examination will not be reversed on appeal unless the ruling evidences an abuse of discretion resulting in manifest prejudice to the defendant. *Franklin*, 135 Ill. 2d at 96.

■ In this case it is clear that defendant suffered no prejudice from the trial court's rulings. Everything that defendant claims he should have been allowed to cross-examine the three law enforcement officers about, he was able to elicit from two of them on direct examination. Further, defense counsel was given great latitude in examining Ron White about his role in the investigation of defendant, which is the very information defendant now claims was improperly restricted on cross-examination. Finally, the fact that this trial was held before a judge rather than a jury reinforces our conclusion that no prejudice occurred. Defendant failed to establish the manifest prejudice to his case that is required for reversal on an issue such as this.

### SPEEDY TRIAL

Defendant next claims that the trial court erred when it denied his second motion to dismiss for failure to provide him with a speedy trial. The State argues that no speedy trial violation occurred.

On November 12, 1991, which was to be the first day of trial, defendant brought a motion to dismiss on speedy trial grounds. The State told the trial judge that it had first received the motion that morning and that it appeared that transcripts of earlier court proceedings were, needed in order to properly attribute earlier delays. These transcripts were not attached to the motion to dismiss. The parties subsequently agreed to hear the motion on December 19, 1991, at which time the transcripts apparently were reviewed. The trial court denied the motion on December 19, 1991.

On January 9, 1992, defendant brought a second motion to dismiss on speedy trial grounds, claiming that the period between November 12, 1991, and December 19, 1991, was not chargeable to him for speedy trial purposes. The trial court denied this motion as well, and we are presented with the question of which party is to be charged with the November 12 to December 19 time period.

Defendant argues that he is merely required to alert the trial court that his speedy trial right has been violated and then any time attributable to processing the motion is chargeable to the State. The State answers that the time period in question is attributable to defendant because it was his failure to include the necessary transcripts with his first motion that led to the delay in question.

Defendant was to be tried within 120 days after he was incarcerated unless he himself caused the delay. (Ill. Rev. Stat. 1991, ch. 38, par. 103—5(a).) A delay is charged to a defendant for speedy trial purposes when his act in fact causes or contributes to the delay. (*People v. Turner* (1989), 128 Ill. 2d 540, 550.) Moreover, a de·endant claiming a violation of his right to a speedy trial has the burden of establishing the violation. *People v. Bowman* (1990), 138 Ill. 2d 131, 137.

Defendant cites us to *People v. Grant* (1982), 104 Ill. App. 3d 183, for the proposition that the delay caused by the processing of a motion to dismiss for failure to provide a speedy trial is not a delay attributable to the defendant for speedy trial purposes, because such motion is merely the means by which the defendant is required to bring the violation to the court's attention. *Grant* does indeed espouse that rule, but supplies no elaboration beyond citing *People v. Uryasz* (1975), 32 Ill. App. 3d 825. *Uryasz* states the rule without any rationale and without any cite to authority. (*Uryasz*, 32 Ill. App. 3d at 827.) Our research has traced the rule to the case of *People v. Tamborski* (1953), 415 Ill. 466.

We have examined *Tamborski*, and we find it to have held merely that, because the defendant's trial was not delayed by any act on the part of the defendant, the time for processing the defendant's second

motion for discharge on speedy trial grounds would not be charged against the defendant for speedy trial purposes. (*Tamborski*, 415 Ill. at 472-75.) *Tamborski* does not proclaim a general rule that the time involved in deciding a motion to dismiss on speedy trial grounds cannot or should never be charged to a defendant. Although a subsequent Illinois Supreme Court decision, *People v. Moriarity* (1966), 33 Ill. 2d 606, cites *Tamborski* for what can be construed as just such a general proposition (*Moriarity*, 33 Ill. 2d at 611), the one-sentence proclamation in *Moriarity* is *dictum*.

We believe that in this case the time period between November 12, 1991, and December 19, 1991, is properly attributable to defendant. Here, defendant did not include with his motion transcripts that were apparently necessary to resolve a dispute regarding the proper party to whom to attribute earlier delays. As noted, defendant bears the burden of establishing a violation of his speedy trial rights. (*People v. Bowman* (1990), 138 Ill. 2d 131, 137.) Further, defendant did not argue that such transcripts were unnecessary to decide the motion, ask for a closer court date, or object when the assistant State's Attorney opined that the time from the filing of the motion until the hearing date would be attributable to defendant. Defense counsel agreed to the December 19 hearing date. A defendant is deemed to have occasioned a delay for speedy trial purposes when he "requests a continuance, agrees to a continuance or through his actions otherwise contributes to the delay." (*People ex rel. Hatch v. Elrod* (1989), 190 Ill. App. 3d 1004, 1011.) Here, defendant not only agreed to the continuance, but his failure to provide transcripts with his motion to dismiss contributed to the delay. Defendant was not denied his statutory right to a speedy trial.

Further, we believe that our decision today does not veer from the teachings of our supreme court, but rather applies the *Tamborski* decision in a way consistent with common sense. It is simply not practical to charge automatically to the State all time connected with the processing of any motion to dismiss for violation of a defendant's speedy trial rights, especially in a case such as the present one. We also note that other courts have found, with little or no discussion, that delays attributable to deciding motions to dismiss on speedy trial grounds are chargeable to defendants. See *People v. Smith* (1976), 42 Ill. App. 3d 731, 734-35; *People v. Yates* (1974), 17 Ill. App. 3d 765, 767; see also *United States v. Tedesco* (7th Cir. 1984), 726 F.2d 1216, 1221 (delay resulting from filing of motion to dismiss for violation of Federal Speedy Trial Act (18 U.S.C. §3161 *et seq.* (1988)) was excludable under Act).

OTHER CRIMES EVIDENCE

Finally, defendant contends that he was denied a fair trial when the judge allowed the State to cross-examine Ron White about his prior drug dealings with defendant. Specifically, defendant says that the State should not have been allowed to elicit from White that he had purchased cocaine from defendant in the past, that he had been with defendant in the past when defendant had possessed cocaine, and that defendant had fronted cocaine to him in the past. Defendant argues that the introduction of this evidence violated the ruling on his motion *in limine*, which limited other crimes evidence to acts admitted by defendant in his statements to police, and violated the State's answer to discovery in which it stated that it would not rely on any of defendant's prior acts.

The State claims that defendant "opened the door" to the disputed evidence when defense counsel questioned Ron White about White's dealings with drugs and his deal with the State whereby White would escape prosecution on drug charges if he "made" some big arrests for the State. Alternatively, the State argues that any error which occurred was harmless in light of the strength of the evidence proving defendant's guilt and in light of the fact that defendant was tried by a judge rather than a jury.

Although evidence of other crimes committed by a defendant is inadmissible to prove propensity to commit crime, it is admissible if relevant for other purposes, such as to show intent, motive, *modus operandi*, identity, or absence of mistake. (*People v. Musitief* (1990), 201 Ill. App. 3d 872, 876-77.) The trial judge must weigh the probative value of other crimes evidence against its prejudicial effect and may exclude the evidence if its prejudicial effect substantially outweighs its probative value. (*People v. Tellez* (1992), 235 Ill. App. 3d 542, 554.) An appellate court will not reverse a trial court's decision to admit evidence of other crimes unless the trial court abused its discretion in ruling the evidence admissible. *People v. Brozan* (1987), 163 Ill. App. 3d 73, 80.

■ In this case we find no abuse of discretion. A review of the transcript of proceedings makes it clear that the defense sought to paint Ron White as a drug dealer who would plant large quantities of cocaine in defendant's garage to avoid going to jail. The State's theory was that defendant was a large-scale drug dealer, defendant's defense was that he was not and that Ron White framed him. Once defendant questioned Ron White about White's motive to frame defendant and White's opportunity to do so, the State was permitted

to rebut defendant's theory with proof that defendant and Ron White had had previous drug dealings in which defendant was the seller and White played the role of defendant's salesman. See *People v. DeBeck* (1990), 204 Ill. App. 3d 15, 18 ("where the defense first enters into the subject matter complained of, the State has a right to question a witness in order to present the whole story to the jury").

Moreover, it is important that the trial in this case took place before a judge rather than a jury. In such a case, it is presumed that the judge considered only admissible evidence in reaching his conclusion, and the defendant seeking reversal bears the burden of showing on appeal that improper evidence influenced the court. (*People v. Mytnik* (1978), 66 Ill. App. 3d 624, 626-27.) Defendant makes no showing that the trial judge considered the other crimes evidence as bearing on anything beyond the relationship between defendant and Ron White. We find no abuse of discretion.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

BOWMAN and DOYLE, JJ., concur.